LAW OFFICES
# WOODLEY & McGILLIVARY LLP
1101 VERMONT AVENUE, N.W.
SUITE 1000
WASHINGTON, D.C. 20005
TELEPHONE: (202) 833-8855
FAX: (202) 452-1090
E-MAIL: INFO@WMLABORLAW.COM

THOMAS A. WOODLEY
GREGORY K. McGILLIVARY
DOUGLAS L. STEELE
MOLLY A. ELKIN
DAVID RICKSECKER
MEGAN K. MECHAK
SARA L. FAULMAN
DIANA J. NOBILE
REID COPLOFF
SARAH M. BLOCK
WILLIAM W. LI
JOHN W. STEWART
MATTHEW D. PURUSHOTHAM
HILLARY LeBEAU
AFROZ BAIG
MICHAEL R. KEEFE

EDWARD J. HICKEY, JR.
(1912-2000)

November 28, 2018

**VIA ECF**
Honorable John G. Koeltl, U.S.D.J.
United States District Court
Southern District New York
500 Pearl Street
New York, NY 10007

    Re:    **Jones, et al., v. New York City Housing Authority**
                **Case No. 17-CV-3683 (JGK)**

Dear Judge Koeltl:

      In accordance with the Court's endorsement of the parties' request for a settlement approval conference (ECF Dkt. 60), plaintiffs respectfully submit this letter on behalf of all parties regarding the parties' proposed settlement in the above-referenced case. The signed settlement agreement and a proposed Order are attached. Also accompanying this letter are plaintiffs' counsels' fee declarations supporting the attorneys' fees and costs agreed to by the parties in the settlement agreement. For the reasons set forth below, the settlement is fair and reasonable, and should be approved.

      The plaintiffs (i.e., the four named plaintiffs and the 285 opt-in plaintiffs)[1] have been informed of the terms of the settlement and have been provided with an opportunity to review the settlement agreement. There have been no objections to the settlement. There are no Fed. R. Civ. P. 23 class claims and, accordingly, neither notice nor preliminary approval of the settlement are requested in this Fair Labor Standards Act ("FLSA") case. Instead, since this is a multi-plaintiff case, the parties request that a settlement approval conference be set to allow any plaintiff who objects to the settlement to either appear in person at the conference to voice his/her objection or,

---

[1] There are 289 plaintiffs in the case. However, according to NYCHA's payroll records, three of the plaintiffs were employed as Housing Managers or Housing Assistant Managers during the entire recovery period. These plaintiffs have been notified that they are ineligible to share in the settlement monies and have asserted no objection. They are listed in the Attachments as receiving no damages.

in the alternative, to contact the Court, in writing, to voice his/ her objection and to explain all reasons for the objection. Counsel for the parties are available for the settlement approval conference on December 12 (a.m. only), December 20, or December 21, 2018, or on a date more convenient for the Court.  Upon this Court's approval, the settlement agreement will take effect provided that ninety percent (90%) or more of the plaintiffs do not object to the settlement agreement.

###    I.    Claims Asserted in this Case

This is an action brought under the FLSA to recover unpaid overtime compensation on behalf of current and former employees of the New York City Housing Authority (NYCHA) employed as non-supervisory Housing Assistants. Plaintiffs filed their complaint on May 16, 2017, alleging various overtime pay violations under the FLSA, including allegations of unpaid pre-shift, post-shift and meal period work, late payment of overtime, miscalculation of the rate at which FLSA overtime was paid by failing to include all shift differentials in the calculation of the rate at which overtime was paid, and miscalculation and payment of overtime at the straight time rate of pay when compensatory time was provided instead of payment of compensatory time at the rate of one and one-half for overtime hours worked in excess of 40 hours a week. (ECF Dkt. 1).

Prior to the filing of the complaint, plaintiffs' counsel met with numerous Housing Assistants to learn about the plaintiffs' work practices and how they were paid, and to determine if plaintiffs assigned to different Housing Developments were similarly situated. Plaintiffs then filed the complaint.

On August 3, 2017, the Court entered a Case Management Order setting October 4, 2017 as the deadline for plaintiffs to join the case.  (ECF Dkt. 31). Pursuant to plaintiffs' counsel's requests, however, defendant continued to allow Housing Assistants to opt-in to the case after that deadline.  Ultimately, 31% of the putative collective of Housing Assistants joined this action.

On November 14, 2017, the Court entered a discovery Order under which the parties selected 20% of the opt-in plaintiffs and all Named Plaintiffs to serve as "Phase I" discovery plaintiffs.  (ECF Dkt. 41).  On December 5-6, 2017, the parties randomly selected 57 opt-in plaintiffs to join the named plaintiffs to serve as Phase I Discovery Plaintiffs.  Thereafter, defendant served document requests and interrogatories on all Phase I Discovery Plaintiffs and, took the depositions of eight (8) Phase I Discovery Plaintiffs.  In addition, defendant responded to plaintiffs' written discovery, producing in excess of 6,700 pages of documents, and millions of lines of payroll and punch data for all opt-ins and named plaintiffs.  Plaintiffs' expert witness then analyzed the computerized punch and payroll data pursuant to plaintiffs' counsel's instructions and prepared a report that was provided to defendant on August 14, 2018. These calculations formed the basis for the negotiations that subsequently occurred between defendant's counsel and plaintiffs' counsel that led to the settlement of the case.

In another FLSA case involving NYCHA Caretakers plaintiffs' counsel took multiple FRCP Rule 30(b)(6) depositions in September and October 2017, covering numerous topics applicable to this case, including NYCHA's timekeeping system and polices, FLSA training, and FLSA compliance efforts.

On June 15, 2018, the parties informed the Court that they needed additional time to complete discovery and to explore settlement. (ECF Dkt. 49). On various dates thereafter, the parties apprised the Court of their settlement progress, their need for additional time to complete settlement negotiations, and ultimately, on November 1, 2018, that they had reached a deal in principle and were drafting the settlement documents. (ECF Dkts. 50, 54, 56, 58, 59).

Prior to entering negotiations, plaintiffs' counsel designated a settlement team of the four Named Plaintiffs and provided all of the opt-in plaintiffs notification of the composition of the team and an opportunity to object to the team. None did. During the period in which the negotiations occurred, plaintiffs' counsel consulted with the authorized settlement team. The Named Plaintiffs who comprised the settlement team, approved the settlement terms. Specifically, the parties agreed on the settlement amounts for backpay, liquidated damages, service awards, and attorneys' fees and expenses.

The parties' representatives signed the enclosed settlement agreement on November 16 and 28, 2018. The plaintiffs have all been notified of the terms of the settlement agreement, the methodology for distributing the settlement, the amount of backpay and liquidated damages to be paid, their individual points under the settlement, the attorneys' fees and costs to be paid by NYCHA, and the amounts of the service awards. To date, no plaintiff has submitted any objection.

## II.     Terms of the Proposed Settlement

The settlement agreement provides that NYCHA will pay a total of $267,000.00 in backpay, liquidated damages and service awards to the plaintiffs. Of this amount, $130,500.00 will be paid as backpay, an equal amount will be paid as liquidated damages, and a total of $6,000.00 will be paid as incentive payments to the four Named Plaintiffs who served on the settlement team and provided other assistance.[2]  In addition, NYCHA has agreed to pay statutory attorneys' fees in the amount of $120,060.84 to the law firm of Woodley & McGillivary LLP and $51,454.64 to the law firm of Spivak Lipton LLP, as well as expenses in the amount of $26,484.52.  The plaintiffs have been informed of this allocation of the settlement funds.

The settlement funds are divided among the plaintiffs as follows.  For each week that a plaintiff worked as a Housing Assistant during the recovery period, the plaintiff received one

---

[2] The four Named Plaintiffs on the settlement team are Steve Jones, Jock Mathews, Dana Patterson and Deborah De La Mothe.

point. The recovery period is calculated for each plaintiff by going back three years from the date that a plaintiff's consent-to-sue form was filed in court up to November 2, 2018. The points were then divided into the total amount of funds recovered for the plaintiffs.

Each of the plaintiffs has been informed of the points that have been calculated for him/her using the defendant's payroll data. The plaintiffs had an opportunity to review their point assignments and had an opportunity to submit disputes. None did. Accordingly, each individual plaintiff's settlement amount is now final and plaintiffs' counsel are in the process of notifying each plaintiff of the amount that he/she will receive under the settlement if the Court approves the settlement. In addition, the amounts that all of the other plaintiffs will receive under the settlement agreement is posted on a confidential website to which only the plaintiffs have access.

Paragraph 2.5 of the settlement agreement provides that the defendant will pay plaintiffs' statutory reasonable attorneys' fees and expenses. Plaintiffs' counsel is handling this matter on a thirty-three and 1/3 percent (33 1/3%) contingent fee. However, the payment of the statutory fees and costs will result in the plaintiffs not paying any contingent fee whatsoever and they will not have to pay any of the costs of the litigation from the $267,000.00 allocated to them under the settlement agreement.

### III.    Applicable Factors for Approving FLSA Settlements

A settlement in an FLSA collective action is not effective unless it is approved by either a district court or the United States Department of Labor. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). This letter addresses the factors for approving FLSA settlements, including those identified in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332 (S.D.N.Y. 2012). District courts in the Second Circuit "approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Clem v. Keybank, N.A.*, 2014 U.S. Dist. LEXIS 87174 (S.D.N.Y. June 20, 2014) (*citing Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n.8 (11th Cir. 1982)). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013).

Courts evaluating whether stipulated FLSA settlements are reasonable consider a variety of factors, including:

   (1) the plaintiffs' range of possible recovery;
   (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses;
   (3) the seriousness of the litigation risks faced by the parties;
   (4) whether the settlement is the product of arm's-length bargaining between experienced counsel; and
   (5) the possibility of fraud or collusion.

4

*See Wolinsky v Scholastic, Inc.*, 900 F. Supp. 2d 332, 336 (S.D.N.Y. 2012) (internal quotations omitted).  Factors weighing against approval include "the presence of other employees situated similarly to claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry of in a workplace." *Id.*

Courts in this Circuit have recognized that, "[i]n FLSA collective actions, just as in Rule 23 class actions, service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiff." *See, e.g., Sanz v. Johnny Utah 51 LLC*, 2015 U.S. Dist. LEXIS 51683 (S.D.N.Y. April 15, 2015) (JMF) (quoting *Diaz v. Scores Holding Co., Inc.*, No. 07-CV-8718 (THK), 2011 U.S. Dist. LEXIS 112187, 2011 WL 6399468, at *3-4 (S.D.N.Y. July 11, 2011)).  This Court has regularly approved service awards to representative plaintiffs totaling up to 9.1% of the settlement amount. *See, e.g., Johnson v. Brennan,* 2011 U.S. Dist. LEXIS 105775 at *2, 21 (S.D.N.Y. Sept. 16, 2011) (awarding incentive payments totaling 9.1% of a $440,000 FLSA/NYLL settlement); *see also Hyun v. Ippudo USA Holdings,* 2016 U.S. Dist. LEXIS 39115, at *6 (S.D.N.Y. Mar. 24, 2015) (citing *Mills v. Capital One,* 2015 U.S. Dist. LEXIS 133530, at *48 (S.D.N.Y. Sept. 30, 2015) (collecting cases)).

### IV.     Application of the FLSA Factors to the Proposed Settlement

As discussed below, the parties believe that the proposed settlement terms in this case are fair and reasonable to the plaintiffs and to the defendant. The settlement represents a good faith compromise of the parties' *bona fide* dispute regarding the plaintiffs' pre-shift unpaid overtime claims, unpaid meal period claims, late payment claims, regular rate calculation claims, and claims regarding the payment of straight time as overtime compensation rather than the FLSA requirement that it be paid at one and one-half times the regular rate. In addition, the settlement represents a *bona fide* dispute regarding whether an award of liquidated damages is appropriate, and whether a two or three-year statute of limitations would apply to plaintiffs' claims. Defendant's defenses regarding the amount, if any, of uncompensated time, and that to the extent there were FLSA violations, they were not willful and were in good faith, were considered in the settlement negotiations. Plaintiffs' counsel shared their expert's calculations of the damages under plaintiffs' theories and the parties used this information to negotiate a fair settlement. This compromise was reached after arms-length negotiations between the parties over the extremely complicated and multi-faceted damages claims of the plaintiffs.

### A. Plaintiffs' Range of Possible Recovery

Although plaintiffs believe that they have alleged sufficient facts to show a continuing and systemic violation of the provisions of the FLSA overtime pay protections, the plaintiffs were also cognizant of additional difficulties faced in this litigation. In particular, the defendant claimed that the plaintiffs did not perform work prior to or after their shifts and during their meal periods. Since there were no time records regarding the alleged unpaid meal periods, the parties' negotiations hinged on plaintiffs' depositions in which they testified that they regularly worked through their unpaid meals and counsel's own investigations of these claims with the plaintiffs' supervisors telling defendant that the plaintiffs never worked through their lunch hour and that if they did, they were provided with a late lunch.

In addition, the defendant argued that the pre-shift unpaid recorded time was not work time, and instead simply reflected time on the clock for the employees' own convenience for commuter or parking reasons. Plaintiffs disputed these facts based on information learned from the plaintiffs during interviews and based on plaintiffs' deposition testimony revealing that plaintiff Housing Assistants have keys to the offices and start working as soon as they swipe into Kronos (NYCHA's timekeeping system), including printing rent delinquency logs, preparing rent notices, preparing print outs for annual reviews; printing leases and preparing rental packages, preparing warrants and any other legal documents, and addressing tenant concerns.
.
Adding to the complications involved in estimating the potential recovery are issues concerning whether the defendant could avoid the imposition of liquidated damages and whether the plaintiffs could establish whether the defendant's actions were "willful" so as to apply a three-year statute of limitations instead of a two-year statute of limitations to plaintiffs' claims pursuant to 29 U.S.C. § 255(a). For this reason, the range of potential recovery was in flux.

As reflected in paragraph 2.6 of the agreement, the settlement will be distributed among the plaintiffs based on the number of weeks that each plaintiff has worked for the defendant as a Housing Assistant during the recovery period applicable to that plaintiff. The methodology of using weeks of employment during the relevant statute of limitations period to determine the plaintiffs' amounts is the same methodology used in other FLSA cases involving complicated off-the-clock claims. This method is routinely used in FLSA cases involving a variety of different claims wherein the risks concerning whether the plaintiffs may win are difficult to separately quantify for each claim. *See, e.g., Johnston, et al. v. New York City Housing Authority,* 1:16-cv- 9924 (JGK)(S.D.N.Y. January 19, 2018)(approving settlement agreement containing the same claims and same distribution methodology at issue here for a different classification of NYCHA workers, as fair and reasonable in case brought by NYCHA Exterminators); *See, e.g., Brown, et al. v. New York City Housing Authority,* 1:16-cv- 9924 (RA) (S.D.N.Y. September 14, 2018)(approving settlement agreement containing the same claims and same distribution methodology at issue here for NYCHA Maintenance Workers and Heating Plant Technicians, as fair and reasonable); *See, e.g., Lewis, et al. v. New York City Housing Authority,* 1:17-cv- 0294 (PKC)(S.D.N.Y. July 27, 2018)(approving settlement agreement containing the same claims and same distribution methodology at issue here for a NYCHA Caretakers); *Robinson, et al. v New*

6

*York City Housing Authority,* 15-cv-4543 (S.D.N.Y. September 23, 2016) (approving settlement agreement containing the same distribution methodology as a fair, reasonable, and adequate agreement settling FLSA claims by community coordinators and other workers against NYCHA); *Small v. City of New York,* 1:14-cv-3469 (S.D.N.Y. May 15 , 2015) (approving settlement as fair, reasonable and adequate agreement settling FLSA claims by NYPD police sergeants where amounts were based on months of eligibility going back 3 years from each plaintiff's filing date); *Mullins v. City of New York*, 1:06 cv 20238 (SAS) (approval of settlement of NYPD police sergeants' FLSA claims based on months of eligibility during FLSA recovery period based on date consent filed in court);  *Aarons v. City of New York*, 1:09-cv-10138, DE 26 (S.D.N.Y. June 15, 2011) (approving as fair, reasonable, and adequate an agreement settling FLSA claims brought by paramedics and emergency medical technicians where settlement amounts were calculated based on employees' months of eligibility); *Conzo v. City of New York*, 1:05-cv-705, DE 630 (S.D.N.Y. June 15, 2011) (same); *Parker v. City of New York*, 1:04-cv-04476, DE 51 (S.D.N.Y. February 1, 2007) (approving as fair, reasonable, and adequate an agreement settling FLSA claims brought by New York City juvenile counselors where settlement amounts were calculated based on employees' months of eligibility). Accordingly, the method of distributing the settlement amounts among the plaintiffs is fair and equitable.

In the settlement in this case, the plaintiffs believe they have recovered a significant portion of their potential recovery at trial, including a portion of the liquidated damages.  The ultimate amount at trial would depend on factors such as whether NYCHA won on its claim that plaintiffs are not entitled to compensation with respect to claims about uncompensated pre-shift work and that they are not entitled to compensation for work allegedly performed during meal periods, whether plaintiffs would recover two or three years as a statute of limitations, and how much time, if any, that a jury would find that the plaintiffs worked off-the-clock, including time that is not reflected on defendant's time keeping system during unpaid meal periods.

While there are many ways to look at the damages recovered, one way is that it reflects payment to each plaintiff for working through one one-hour unpaid meal period each week, working during all of the recorded, but unpaid, pre-shift and post shift time up to 30 minutes each shift but then reducing the value of that particular claim by 30% based on litigation risk, recovery of all backpay related to defendant's failure to compute overtime at the correct rate when it did pay overtime, and recovery of late paid overtime pay in an amount equal to the late paid overtime.  It also includes liquidated damages equal to approximately 65% of the backpay. The average recovery is $1,008.03, and maximum gross amount of recovery is $1025.71 exclusive of any incentive payment.

### B.     Avoiding Anticipated Burdens and Expenses

Litigating FLSA claims and damages can be and would be a fact-intensive process demanding in-depth and costly litigation by both parties.  Without this settlement, both parties would need to spend significant amounts of time, money and expense to complete discovery, undertake voluminous pre-trial briefing of summary judgment motions regarding liability issues,

7

followed by a lengthy trial on damages in which defendant would argue that the case could not be tried using representative testimony because the plaintiffs are not similarly situated, with plaintiffs countering with arguments about why the case is well-suited to proceed to trial using representative testimony.

### C. Seriousness of Litigation Risks

As noted in subsection IV(A) above, there was no guarantee of success on either side. The plaintiffs' allegations detailed various continuing violations of the FLSA, but the defendant raised facts that could have led to a lengthy trial on the merits and/or success on a misjoinder motion. Given the uncertainty over the potential outcome, both parties were motivated to settle this dispute.

### D. Arm's-Length Bargaining

Both parties engaged in good faith, arm's-length negotiation in reaching this settlement. Counsel for both parties, armed with instructions from their clients, discussed settlement terms until a tentative settlement was reached. In particular, plaintiffs' expert witness analyzed detailed payroll information and timekeeping records for each of the plaintiffs.

The settlement terms were approved by NYCHA. The settlement terms were also approved by the settlement team comprised of the four Named Plaintiffs. In addition, all of the plaintiffs have been informed of the settlement terms, and they have been informed of their opportunity, if they so choose, to object to the settlement terms on an individual basis. In addition, they were informed of the settlement distribution methodology and had an opportunity to dispute the number of points assigned to them. No plaintiff submitted a dispute, and, to date, none has objected to the settlement terms.

### E. Possibility of Fraud or Collusion

Given the parties' arms-length negotiating, the parties believe that there was no opportunity for and no possibility of fraud or collusion. The parties represented their clients zealously and obtained what both parties consider to be an appropriate settlement.

With respect to the service awards, the payments were made only to the Named Plaintiffs who came forward and gave voice to the claims, participated on the settlement team, and regularly conferred with plaintiffs' counsel regarding the asserted claims. The amount of the service awards is $1,500 per plaintiff, and since it is being given only to four plaintiffs, totals only $6,000.

As this Court explained in awarding service payments to plaintiffs involved in filing and litigating a similar claim, "in a wages and hours case, where a low level employee assumes responsibility for prosecuting an action against an employer and takes considerable personal risk

8

in so doing, such awards are singularly appropriate." *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014). Service awards "fulfill the important purpose of compensating plaintiffs for the time they spend and the risks they take." *Flores v. Anjost Corp.*, 2014 U.S. Dist. LEXIS 11026, *27 (S.D.N.Y. 2014) (awarding $25,000 to five named plaintiffs and finding that "awards requested here are typical of service awards within the Second Circuit.") *See also, Surdu v. Madison Global, LLC,* 2018 U.S. Dist. LEXIS 48356, *35 (S.D.N.Y. Mar. 23, 2018) (awarding $8,500 each to five plaintiffs, totaling $42,500 and representing 12.4% of the settlement fund, in FLSA case); *Hyun v. Ippudo USA Holdings,* 2016 U.S. Dist. LEXIS 29115, *6 (S.D.N.Y. Mar. 24, 2016) (awarding $6,000 to each of five named plaintiffs as service award, for $30,000 total equaling 5% of total settlement amount, in FLSA case); *DeLeon v. Wells Fargo Bank, N.A.,* 2015 U.S. Dist. LEXIS 65261, *15 (S.D.N.Y. May 7, 2015) (awarding $15,000 to named plaintiff, "recogniz[ing] the risks that the named-Plaintiff faced by participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in mediation."); *Henry v. Little Mint, Inc.*, 2014 U.S. Dist. LEXIS 72574 (S.D.N.Y. May 23, 2014) (approving $10,000 service awards to named plaintiffs in FLSA/Rule 23 Hybrid); *Hernandez v. Merrill Lynch & Co.*, 2013 U.S. Dist. LEXIS 42681 (S.D.N.Y. Mar. 21, 2013) (approving service payments of $15,000 to named plaintiffs, $12,000 to participating plaintiffs, and $4,000 to an FLSA-opt in plaintiff in FLSA/Rule 23 Hybrid); *Capsolas v. Pasta Res. Inc*., 2012 U.S. Dist. LEXIS 144651, *9 (S.D.N.Y. Oct. 5, 2012) (awarding $20,000 service award to class representative in FLSA settlement).

      The service awards here are proportionally a very small amount of the total settlement representing only 2% of the $267,000 allocated to the plaintiffs. As a result, there is no risk of any breach of the settlement team's fiduciary obligations resulting from these payments. Moreover, none of the individual plaintiffs have objected to these payments.

      The total settlement damages equal $267,000.00, and this figure does not include attorneys' fees and costs. The statutory attorneys' fees and costs were negotiated at arms-length and will result in the plaintiffs not having to pay any contingent fee on their backpay and liquidated damages, although they agreed to pay a 33 and 1/3 percent contingent fee when they retained plaintiffs' counsel.

### F. Attorneys' Fees and Costs

      Defendant has agreed to pay statutory fees and expenses in the amount of $146,428.61 to the law firm of Woodley & McGillivary LLP and $51,571.39 to the law firm of Spivak Lipton LLP. Of these amounts, $26,367.77 represents expenses incurred by plaintiffs' counsel Woodley & McGillivary and $116.75 in expenses by plaintiffs' counsel Spivak Lipton. Accordingly, NYCHA is reimbursing plaintiffs for their $171,515.48 of their fees incurred, and their expenses in the amount of $26,484.02 The plaintiffs' *actual* lodestar through November 13, 2018, is $246,044.50. The amount of the fees recovered were negotiated arms-length and represent a 30% reduction to the lodestar amount of fees accrued in the case through November 13, 2018.

9

Significant time and labor were undertaken by the two law firms in reaching the settlement. Elkin Decl. ¶¶14, 21-28; Pordy Decl. ¶11-15, 19.[3] During the one and half-years litigating this lawsuit, plaintiffs' counsel have not been paid for any of the work that they have performed. This uncompensated work has been substantial and includes: (1) interviewing witnesses and selecting Named Plaintiffs; (2) preparing and filing the complaint; (3) overseeing the opt-in process; (4) negotiating a joint discovery plan; (5) preparing eight plaintiffs for depositions; (6) defending plaintiff depositions; (7) responding to document requests on behalf of 57 plaintiffs; (8) reviewing and analyzing thousands of pages of documents produced by defendant; (9) digesting and analyzing plaintiff deposition transcripts; (10) conducting strategy meetings with all counsel; (11) communicating with named and opt-in plaintiffs; (12) preparing settlement proposals and counter-proposals; (13) reviewing and analyzing extensive damages calculations; (14) communicating with the expert witness; (15) participating in multiple telephonic conferences with settlement team; (16) preparing, drafting and reviewing settlement papers including a joint request for approval and attorneys' fees declarations; and (17) drafting letters to plaintiffs about the settlement team and settlement. Elkin Decl. ¶ 14; Pordy Decl. ¶19

In the lodestar calculations, the firms used the same rates that they sought and obtained in this Court in an FLSA case settled earlier this year involving NYCHA exterminators, *Johnston, et al. v. NYCHA*. (JGK) (ECF Dkt. 60). These rates range from $205 an hour for new associates to $455 to $540 an hour for senior partners. Elkin Decl. ¶ 16; Pordy Decl. ¶17. These rates are within the range of rates approved by the courts in the Second Circuit in FLSA cases. *See e.g., See, e.g., Scott v. City of New York*, 643 F.3d 56, 59 (2d Cir. 2011) (holding that rate of $550 per hour in FLSA case was reasonable); *Lora v. J.V. Car Wash, Ltd.*, No. 11cv9010 (LLS) (AJP), 2015 WL 7302755, at *4-6 (S.D.N.Y. Nov. 18, 2015) (adopting report and recommendation and finding $500 per hour to be reasonable rate in FLSA case for attorney with 28 years' experience); *Guallpa v. N.Y. Pro Signs Inc.,* No. 11cv3133 (LGS) (FM), 2014 WL 2200393, at *9-10 (S.D.N.Y. May 27, 2014) (approving rate of $600 per hour, in wage-and-hour case, for attorney who graduated law school in 1995), report and recommendation adopted sub nom., *Guallpa v. NY Pro Signs Inc.,* No. 11cv3133 (LGS), 2014 WL 4105948 (S.D.N.Y. Aug. 18, 2014); *Torres v. Gristede's Operating Corp.,* No. 04cv3316 (PAC), 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012), aff'd, 519 F. App'x 1 (2d Cir. 2013) (findings that hourly rates of $550 and $500 were reasonable for partners in FLSA case).

As noted in the Declarations of Hope Pordy and Molly Elkin, Plaintiffs' counsel are seasoned successful lawyers in the wage and hour field. Exh 3; Elkin Decl. ¶¶ 3 -13; Exh. 4; Pordy Decl. ¶ 3-10. Ms. Elkin has served as lead counsel in over 75 FLSA court and arbitration cases collecting over $100 million for workers nationwide. Elkin Decl. ¶4-5. She served as the Union/Employee Chair of the American Bar Association's Labor and Employment Law Section Committee on Federal Labor Standards Legislation from 2003 through 2009; and Ms. Pordy served in that capacity from 2009 to 2015. Elkin Decl., ¶ 9; Pordy Decl. ¶ 10 . This committee

---

[3] The Elkin Declaration along with referenced exhibits is attached as Exhibit 3, and the Pordy Declaration is attached as Exhibit 4.

has jurisdiction over statutes enforced by the Department of Labor, including the Fair Labor Standards Act. *Id.* In 2014, the Chief Judge of the United States Court of Federal Claims appointed Ms. Elkin to serve on the United States Court of Federal Claims Advisory Committee on Civilian Pay issues and she continues to serve in that capacity. Elkin Decl. ¶ 8.  In November 2017, Ms. Elkin was inducted into the College of Labor and Employment Lawyers as a Fellow. Elkin Decl. ¶7. Similarly, Ms. Pordy serves on the Steering Committee of the Wage and Hour Committee for the New York branch of the National Employment Lawyers' Association and is a frequent Speaker on various labor and employment topics, including wage and hour issues. Ms. Pordy has also been the Co-Chair of the Leadership Development Program for the American Bar Association's Section on Labor and Employment Law since 2016. Pordy Decl. ¶¶9-10. Both firms were supported by diligent, hard-working associates and paralegals who helped bring this case to a swift and favorable resolution for the plaintiff class.

Based on the foregoing, the hours and the rates are reasonable.  As noted above, when plaintiffs retained plaintiffs' counsel, plaintiffs agreed to pay plaintiffs' counsel a thirty-three and 1/3 percent contingent fee on the monies recovered on their behalf. However, since the statutory attorneys' fees to be paid to plaintiffs' counsel exceed this amount, plaintiffs are not paying any contingent fee in this case.  Plaintiffs' counsel took a significant reduction to their lodestar fee as part of the parties' good faith negotiations, allowing the parties to reach a reasonable compromise.

### G.     Factors Weighing Against Settlement

None of the *Wolinsky* factors weighing against settlement are present in this case. Consistent with their obligations in light of the Second Circuit's decisions in *DeJesus v. HF Mgmt. Servs.,* 726 F.3d 85 (2d Cir. 2013) and *Lundy v. Catholic Health System of Long Island,* 711 F.3d 106 (2d Cir. 2013), plaintiffs' counsel undertook a careful and thorough investigation of the plaintiffs' claims before filing the instant lawsuit. Approximately 31% of the putative collective members joined the lawsuit.

NYCHA worked diligently with plaintiffs' counsel to resolve this case. To the extent that there is a history of non-compliance with the FLSA, NYCHA has addressed it by resolving this case and by working with plaintiffs' counsel to resolve three other FLSA cases against NYCHA this year.  Accordingly, none of the factors identified in *Wolinsky* as weighing against settlement are present here.

## V. Conclusion

For all of the above reasons, the parties believe that this proposed settlement will successfully provide an appropriate recovery of alleged unpaid overtime compensation for the NYCHA employees. Accordingly, the parties respectfully submit that the settlement is fair and reasonable and should be approved by the Court. We appreciate the Court's consideration of these matters.

Respectfully submitted,

WOODLEY & McGILLIVARY LLP

*/s/ Molly A. Elkin*

Molly A. Elkin

Cc: All Counsel by ECF

4817-9975-3088, v. 1